Filed 11/24/25  Thomas v. So. Cal. Permanente Medical Group CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JAMES THOMAS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP,<br><br>    Defendant and Respondent. | B331251<br><br>(Los Angeles County Super. Ct. No. BC707843) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mel Red Recana and Randolph M. Hammock, Judges. Affirmed in part and reversed in part.

Stiller Law Firm, Ari J. Stiller; Law Offices of Twila S. White and Twila S. White for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza, Zena Jacobsen, and Nicole F. DeVanon for Defendant and Respondent.

———————————

Plaintiff James Thomas appeals the trial court's judgment in his action alleging discrimination, retaliation, wrongful termination, and related causes of action against Defendant Southern California Permanente Medical Group[1] (SCPMG). After the trial court granted in part SCPMG's motion for summary judgment and denied Thomas's motion for leave to file a third amended complaint, a jury returned verdicts in favor of SCPMG.

We conclude the trial court erred in granting summary adjudication on Thomas's Labor Code section 6310 cause of action, and that error affected the trial of his wrongful termination cause of action. However, we conclude the trial court's denial of Thomas's motion for leave to amend was not an abuse of discretion and the trial court did not err in granting summary adjudication as to punitive damages. We therefore affirm in part, reverse in part, and remand for further proceedings.

## FACTUAL BACKGROUND

Thomas was employed by SCPMG as a licensed vocational nurse (LVN) from 2012 until his termination in January 2017.[2] LVN's are hourly employees who generally work eight-hour shifts

---

[1]    Thomas originally sued multiple defendants, but this appeal involves only causes of action against SCPMG.

[2]    Because this appeal turns on the trial court's summary adjudication order, this part summarizes the evidence before the trial court at the time it rendered that decision. (See *Guz v. Bechtel Nat., Inc.* (2000) 24 Cal.4th 317, 334 ["we . . . consider[] all the evidence set forth in the moving and opposition papers"].) We also construe the facts in the light most favorable to Thomas. (*Nicoletti v. Kest* (2023) 97 Cal.App.5th 140, 144 (*Nicoletti*).)

2

with a one-hour break around lunch time. Thomas and other LVN's used a phone system to clock in and out for their breaks.

From 2014 through 2017, Thomas worked in the Pediatrics Department at SCPMG's West Los Angeles Medical Center. In May 2016, Thomas told Joanna Robinson, the unit manager of the department, he was concerned the staircase did not have nonskid pads. Starting in September 2016, Jamila Dainty became department administrator and Thomas's supervisor.

According to Dainty, on November 17, 2016, one of Thomas's fellow LVN's in the department, Vanessa Garcia, told her "an employee in the department consistently takes lunch while still on the clock." Garcia did not use Thomas's name, but Dainty said she "knew [Garcia] was talking about [Thomas]." Garcia denied telling Dainty any LVN or anyone else had done that. Rather, she testified she asked Dainty "if it was okay" for employees to heat up their food, eat, and then clock out. Garcia agreed she asked Dainty that question because she "wanted to know for her own personal knowledge."

Dainty said she decided to "closely monitor [Thomas's] timekeeping practices" as a result of Garcia's ostensible report. She asked Ariel Rankin, the assistant department administrator, to observe when Thomas was in the break room so Rankin and Dainty could "determine if his observed break matched when he actually clocked in and out for lunch in the time keeping system." Rankin testified she made notes when she "happened to be in the lunchroom and . . . noticed [Thomas] was also [there]." At first, she said she could not recall if Dainty had asked her to do so, then later she said Dainty had asked her. Rankin did not know why Dainty singled out Thomas for observation.

3

From mid-November to mid-December 2016, Dainty said she and Rankin "periodically walk[ed] by or into the staff break room around lunch time"; if they saw Thomas, they noted the time and his activities. Dainty then checked the timekeeping system to determine when Thomas had clocked in and out for his breaks. According to Dainty, she and Rankin created notes memorializing their observations on five dates between November 18 and December 12, reflecting Thomas was in the break room but not yet clocked out for his break. The notes show gaps of 8 to 22 minutes between the times Thomas was seen and the times he clocked out. However, Rankin could not recall when Dainty asked her to make notes about Thomas. She also testified the documents showing the notes were not written by her, and while she ultimately recalled the incidents the notes said she observed, she did not know when they had occurred.

On December 9, 2016, Thomas sprained his ankle after he slipped in a stairwell at work. The injury limited his walking and movement, and he suffered pain for several weeks. He immediately reported the injury to Dainty. He also told her he would not have been injured if the staircase had nonskid pads as other staircases in the building did, and he asked for nonskid pads to be installed to "prevent other people from getting hurt."

Five days later, on December 14, 2016, Dainty asked Thomas to meet with her, Rankin, and his union representative. Dainty accused him of taking breaks without being clocked out, and she told him he had been seen heating and eating his food while on the clock. Thomas denied the allegations. Dainty told him she would investigate. Thomas said his union representative told him she believed the timekeeping violations, if substantiated, might result in a Level 1 or Level 2 disciplinary

warning. After the December 14, 2016, meeting, Dainty believed Thomas's conduct constituted falsification of timekeeping records. As a result, she consulted with a human resources consultant and decided to terminate Thomas's employment. Dainty did not recall the date she made that decision.

Dainty held a follow-up meeting with Thomas on January 13, 2017. She told him the investigation revealed he "had engaged in gross misconduct: specifically, falsification of timekeeping information resulting in an organizational fraud" because he "had deliberately started [his] break while still clocked in for work in an effort to extend [his] meal/rest breaks." Thomas continued to deny wrongdoing. Dainty told him his employment with SCPMG was terminated.

## PROCEDURAL HISTORY

### I.     The Complaint Is Filed and Discovery Begins

Thomas filed his complaint against SCPMG, Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Dainty on May 25, 2018, alleging various causes of action arising from his December 9, 2016, ankle sprain and complaints about the safety of the staircase. On July 20, 2018, Thomas filed a first amended complaint to add a defamation claim. The operative second amended complaint (SAC) was filed August 1, 2018.

The SAC alleged 11 causes of action, the first five of which were premised upon violations of California's Fair Employment and Housing Act (FEHA), Government Code section 12900 et seq.:

(1)     Discrimination based on disability/medical condition (Gov. Code, § 12940, subd. (a));

(2)     Failure to reasonably accommodate (Gov. Code, § 12940, subd. (m));

(3)    Failure to engage in the interactive process (Gov. Code, § 12940, subd. (n));

(4)    Retaliation (Gov. Code, § 12940, subd. (h));

(5)    Failure to take all reasonable steps necessary to prevent discrimination, retaliation, and harassment (Gov. Code, § 12940, subd. (k));

(6)    Discrimination and retaliation (Lab. Code, § 6310[3]);

(7)    Discrimination and retaliation (§§ 98.6 & 1102.5);

(8)    Defamation (see *Taus v. Loftus* (2007) 40 Cal.4th 683, 720);

(9)    Intentional infliction of emotional distress[4] (see *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001);

(10)    Wrongful discharge in violation of public policy (see *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 887); and

(11)    Unlawful and unfair business practices (Bus. & Prof. Code, § 17203).

The parties began discovery. On January 8, 2019, Thomas responded to SCPMG's first set of form interrogatories. In response to an interrogatory asking him to "[n]ame and describe each disability alleged in the PLEADINGS," Thomas identified the sprained ankle he suffered on December 9, 2016. On April 29, 2019, SCPMG deposed Thomas with his counsel present. When asked if he had "another disability or medical condition" while he worked in the pediatrics department, Thomas testified he had

---

[3]    Undesignated statutory references are to the Labor Code.

[4]    This cause of action was dismissed with prejudice in July 2019 upon Thomas's request.

6

suffered from vertigo since 2014. It made him dizzy and caused headaches. He also testified he had provided notes from his doctor requesting modified work duty to his superiors at SCPMG, but the requests were not always accommodated.

## II.   The Summary Judgment Proceedings

On June 27, 2019, SCPMG moved for summary judgment on all of Thomas's causes of action and his prayer for punitive damages. The summary judgment hearing was originally scheduled for September 10, 2019, before Judge Randolph M. Hammock. Thomas moved to continue on the ground he had pending motions to compel discovery. After the court continued the hearing to December 10, 2019, Thomas again moved on October 25 to continue the hearing date. Thomas argued continuation was warranted because his counsel was on a medical leave of absence from September 6 through October 31, and discovery remained pending. The court continued the hearing to April 28, 2020, and later to July 22, 2020, as a result of the COVID-19 pandemic.

On July 8, 2020, Thomas filed his opposition to summary judgment. Among other things, he argued SCPMG discriminated and retaliated against him because of his vertigo and his ankle sprain.  SCPMG filed its response on July 17, 2020, arguing in part that Thomas's vertigo theory was unpled, time-barred, and otherwise foreclosed. On its own motion, the court continued the summary judgment hearing from July 22 to October 1, 2020.

On September 15, 2020, Thomas concurrently filed a motion to further continue the summary judgment hearing (because he sought additional discovery) and a motion for leave to file a third amended complaint to allege facts relating to vertigo. The court denied Thomas's motion to continue the hearing.

7

Before the October 1, 2020, hearing on the motion for summary judgment, the trial court issued a tentative decision granting the motion. At the hearing, the court heard argument from the parties, decided to permit supplemental briefing, and continued the hearing to November 3, 2020.

The trial court received supplemental briefing and heard argument on the summary judgment motion on November 3, 2020. Afterward, Judge Hammock issued a ruling on November 5, 2020, an amended ruling on December 3, 2020, and a further amended and revised ruling on March 8, 2021.

The March 8, 2021, order is the operative, final order and granted SCPMG's motion for summary judgment in part. The trial court determined Thomas had not shown his ankle sprain was a cognizable disability within the meaning of FEHA, and it refused to consider his purported vertigo disability because it had not been alleged in the operative second amended complaint. That was fatal to several of Thomas's FEHA causes of action, specifically: discrimination; failure to reasonably accommodate; and failure to engage in the interactive process. The trial court granted the motion as to those causes of action.

Nevertheless, the trial court determined Thomas had adequately raised a triable issue of material fact as to whether SCPMG's asserted reason for his termination (timecard fraud) was pretext for firing him because of his December 9, 2016, complaints about his ankle injury and the safety of the staircase. Thus, the court denied summary adjudication with respect to Thomas's causes of action arising from those complaints: FEHA retaliation; FEHA failure to prevent discrimination and retaliation; discrimination and retaliation under Labor Code sections 98.6 and 1102.5; and wrongful termination. It also

8

denied the motion as to Thomas's Business and Professions Code section 17203 cause of action because that could be premised on Thomas's surviving FEHA and Labor Code claims.

Finally, the trial court granted the motion as to Thomas's remaining causes of action. Thomas's retaliation cause of action under section 6310 failed because Thomas did not make "a formal complaint to any of the entities listed in" that statute. His defamation cause of action failed because the alleged defamatory statements were privileged. Thomas's prayer for punitive damages failed on the ground the conduct underlying the surviving causes of action could not support punitive damages as a matter of law.

## III. The Motion for Leave to File a Third Amended Complaint

As noted, while the motion for summary judgment was pending, Thomas moved for leave to file a third amended complaint to add allegations supporting the theory he was discriminated and retaliated against because he had vertigo. Thomas argued he did not originally include vertigo-related facts because SCPMG failed to timely produce his medical records in discovery. SCPMG opposed on several grounds, including that Thomas's motion was unreasonably delayed, SCPMG would be prejudiced, and Thomas's proposed vertigo claims failed anyway.

The trial court heard argument on December 3, 2020, and denied Thomas's motion. The court stated Thomas's motion "appear[ed] to have complied" with California Rules of Court, rule 3.1324, but it decided SCPMG's ostensible discovery delays did not excuse Thomas's tardiness in seeking leave to amend because Thomas "knew, before filing the original complaint, that he had suffered from vertigo" and had sought accommodations

9

that were denied. The court also determined allowing Thomas "to essentially put forth a new factual and legal theory of recovery based upon vertigo would be unduly prejudicial to [SCPMG]."

## IV.    The Trial Proceedings

The case was later reassigned to Judge Mel Red Recana for a jury trial on Thomas's surviving causes of action. The court disposed of multiple motions in limine, two of which are pertinent to this appeal: SCPMG's Motions in Limine A (to exclude evidence of vertigo) and B (to exclude references to summarily adjudicated causes of action). The trial court granted both motions. It stated Thomas would have to "prove [his] case, based on the operative complaint, period," and the vertigo allegations were not in the operative complaint. It also precluded him from referring to causes of action that had been summarily adjudicated.

The parties presented their cases to the jury in April and May 2023 on the causes of action for FEHA retaliation and failure to prevent retaliation, sections 98.6 and 1102.5 retaliation, and wrongful termination. During deliberations, the jury asked three questions pertaining to the special verdict form for Thomas's causes of action for sections 98.6 and 1102.5 retaliation and wrongful termination. The jury ultimately returned verdicts in favor of SCPMG on the four causes of action presented to them.

After the jury verdict, Judge Recana found in favor of SCPMG on Thomas's unlawful and unfair business practices cause of action on the ground "there's no evidence that [SCPMG] practices [are] unlawful, unfair, or fraudulent."

10

## V. Thomas Appeals

Judgment was entered on July 17, 2023. Thomas timely appealed. (See Cal. Rules of Court, rule 8.104(a)(1)(A).)

## DISCUSSION

## I. The Trial Court Reasonably Denied Thomas Leave to File a Third Amended Complaint

The trial court determined Thomas had not shown a valid excuse for his long delay in seeking to amend his complaint and allowing him to do so at that late stage of the litigation would be unduly prejudicial to SCPMG. We see no abuse of discretion in the trial court's refusal to permit Thomas's belated amendment.

### A. Standard of Review

" 'The trial court's ruling on a motion to amend a pleading is reviewed under an abuse of discretion standard [citation], and the appellant has the burden of establishing its discretion was abused.' " (*Eng v. Brown* (2018) 21 Cal.App.5th 675, 707; see also *People v. Williams* (2013) 58 Cal.4th 197, 270–271 [an abuse of discretion is " ' "arbitrary, capricious or patently absurd" ' "].)

### B. Overview of Legal Principles

While " ' "[a] trial court has wide discretion to allow the amendment of pleadings, and generally courts will liberally allow amendments at any stage of the proceeding," ' " " 'this policy applies " 'only "[w]here no prejudice is shown to the adverse party." ' " ' " (*Hughes v. Farmers Ins. Exchange* (2024) 107 Cal.App.5th 73, 87, first brackets added (*Hughes*).) Moreover, " ' "a long deferred presentation of the proposed amendment without a showing of excuse for the delay" ' may provide ' "a valid reason for denial." ' " (*Ibid.*) "[A]ppellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is ' "offered after long unexplained delay . . . or where

11

there is a lack of diligence. . . .” ’ ” (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175 (*Melican*); *P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1345 (*P&D Consultants*) [“ ‘ “ ‘unwarranted delay in presenting [an amendment] may–of itself–be a valid reason for denial’ ” ’ ”].)

As an initial matter, we reject Thomas's focus on his filing the motion for leave to amend two weeks prior to the initial summary judgment hearing. That his motion for leave to amend was filed before the hearing is not dispositive of whether the trial court abused its discretion. (See, e.g., *Hughes*, *supra*, 107 Cal.App.5th at p. 87 [motion for leave to amend filed night before summary judgment hearing was properly denied].) Moreover, while the trial court mentioned it had already granted summary adjudication when discussing the motion for leave to amend, that was tangential to its main findings regarding Thomas's lengthy delay and resulting prejudice to SCPMG. In fact, the trial court told Thomas as much at the summary judgment hearing on November 3, 2020.

### C. Thomas's Delay Was Unwarranted

More to the point, Thomas failed to explain—to the trial court or to us—why the vertigo theory and its facts were missing from his original complaint filed on May 25, 2018, and from his first and second amended complaints, which were filed months later during the summer of 2018. Thomas has never explained why he waited until September 15, 2020, to seek leave to amend.

On the contrary, Thomas's focus in the trial court and here has been his argument SCPMG "blocked" his efforts to obtain discovery related to vertigo. SCPMG denies doing so. We need not wade into that dispute because it is beside the point. As the trial

12

court stated, "[Thomas] knew, before filing the original complaint, that he had suffered from vertigo," and "[p]resumably, he would have also known that he sought accommodations for his vertigo that were denied." In fact, Thomas admitted as much during his deposition on April 29, 2019. He testified he had vertigo dating back to his diagnosis in 2014, when he received a "work excuse" from his doctor for modified work duty which was not always accommodated. We fail to see why Thomas could not allege his vertigo theory without discovery from SCPMG. In this court, Thomas argues he needed discovery "to uncover [a] connection between his vertigo and ankle injury," but again, he does not explain how he was ignorant of the purported fact he suffered from vertigo when he tripped on December 9, 2016,[5] let alone how that information would have been in the exclusive control of SCPMG.

Thomas also suggests that while he was aware of his vertigo, his counsel only learned of those relevant facts through discovery. But the pertinent issue is the facts of which Thomas, not his counsel, were aware. (See *Melican*, *supra*, 151 Cal.App.4th at p. 176.) That argument is also undermined by Thomas's extensive deposition testimony regarding vertigo on April 29, 2019, in the presence of his counsel.  Thomas's counsel therefore knew of the vertigo at least as of April 29, 2019, but yet failed to seek leave to amend the complaint for more than 16 months. That unexplained delay is unwarranted. (See *P&D Consultants*, *supra*, 190 Cal.App.4th at p. 1345 [unexplained delay of about 10 months was unwarranted].)

---

[5]    Thomas testified in his deposition on April 29, 2019, he slipped "due to the absence of those nonskid pads."

13

Thomas argues his counsel's medical leave of absence in late 2019 contributed to his delay, but his counsel did not include that in her declaration submitted with the motion for leave to amend. We therefore reject that unsupported and belated factual assertion. (See *Turrieta v. Lyft, Inc.* (2024) 16 Cal.5th 664, 697 [" 'statements made in briefs are not evidence' "]; *People v. Venice Suites, LLC* (2021) 71 Cal.App.5th 715, 724 (*Venice Suites*) [" 'An argument or theory will . . . not be considered if it is raised for the first time on appeal.' "].)

Moreover, counsel's medical leave lasted approximately two months in September and October 2019. Even assuming it were appropriate to exclude counsel's medical leave from the overall delay, Thomas's 14-month delay in seeking leave to amend remains unexplained and unwarranted.[6]

**D. SCPMG Would Have Been Unduly Prejudiced**

The trial court determined allowing Thomas to amend his causes of action at such a late date would be unduly prejudicial to SCPMG because it would allow Thomas "to essentially put forth a new factual and legal theory of recovery based upon vertigo." Among other things, SCPMG had argued it would be prejudiced by being "forced to reorient its defense and discovery efforts to

---

[6] Thomas also argues he "always maintained that vertigo facts are properly encompassed within the SAC, so there should have been no need to amend." We address that issue more fully in part II.B., *post,* but we note Thomas's interrogatory response dated January 8, 2019, identified only Thomas's sprained ankle as the disability alleged in the complaint. Whether vertigo facts "were added as an afterthought or under a plan to take opposing counsel by surprise," neither excuses Thomas's delay in seeking leave to amend. (*Davies v. Symmes* (1942) 49 Cal.App.2d 433, 445.)

14

address this new disability theory" and to file another motion for summary judgment, which would require additional discovery, document production, and motion practice. When (as here) the plaintiff has offered "no explanation for the delay" in seeking leave to amend, and allowing amendment "would require additional discovery" and pretrial motion practice, a court is within its discretion to deny leave to amend. (*P&D Consultants*, *supra*, 190 Cal.App.4th at p. 1345; see also *Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 486–487 (*Magpali*).)

Thomas's opening brief makes no mention of potential prejudice to SCPMG, and many of the cases he relies upon likewise do not discuss the issue of prejudice to the opposing party. (See *Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1663–1664; *Kirby v. Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, 1067–1070; *Soderberg v. McKinney* (1996) 44 Cal.App.4th 1760, 1772–1774.) Here, the trial court appropriately considered the potential prejudice to SCPMG arising from Thomas's proposed and belated amendment. (See *Hughes*, *supra*, 107 Cal.App.5th at p. 87.)

In his reply brief, Thomas argues SCPMG would not have suffered prejudice because the proposed allegations " 'described the continuation of the events asserted in the initial pleading' and [were] based on allegations that [SCPMG] knew Thomas intended to assert." We disagree on two grounds.

First, Thomas's deposition testimony regarding vertigo did not inform SCPMG he intended to assert discrimination based on vertigo. A plaintiff's case is delimited by his pleadings, (see *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253 (*Laabs*)), and Thomas's operative SAC did not mention vertigo. Likewise, on January 8, 2019, Thomas informed SCPMG the disability

15

alleged in his complaint was his sprained ankle. We fail to see how SCPMG should have known Thomas "claimed discrimination based on vertigo" when he had already confirmed his claims were based on a sprained ankle.

Second, Thomas's proposed third amended complaint does not describe a continuation of events, such as "facts which occurred after the initial complaint" had been filed. (*Honig v. Financial Corp. of America* (1992) 6 Cal.App.4th 960, 964.) Instead, he sought to add allegations of events predating his ankle sprain and largely occurring in 2014 and 2015. That " 'proposed amendment opened up an entirely new field of inquiry without any satisfactory explanation as to why this major change in point of attack had not been made long before trial.' " (*Magpali*, *supra*, 48 Cal.App.4th at p. 487.) This pleading essentially abandoned the original premise of an ankle sprain disability in favor of an entirely new factual basis for Thomas's discrimination claims. (See *Melican*, *supra*, 151 Cal.App.4th at p. 176 [amendment seeking to add a new claim did not seek to salvage an " 'imperfectly pleaded' " claim].)

The trial court appropriately "considered the timing" of the motion for leave to amend "and whether [SCPMG] would be prejudiced if [Thomas] were allowed to amend." (*M&F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.* (2012) 202 Cal.App.4th 1509, 1536.) Its conclusion that denial was appropriate was not an abuse of discretion.

## II. The Trial Court Erred in Part in Granting Summary Adjudication

Thomas argues the trial court erred in granting summary adjudication in three ways: (1) by refusing to consider vertigo as a cognizable disability for purposes of his FEHA discrimination

16

cause of action; (2) by concluding the complaint he made about the staircase was not actionable under section 6310; and (3) by deciding he had no valid claim for punitive damages as a matter of law. Thomas further argues the first two errors prejudicially affected the trial of his causes of action for FEHA retaliation, wrongful termination, and violation of section 1102.5.

We agree the trial court erred in summarily adjudicating the section 6310 cause of action, and the error prejudicially affected Thomas's wrongful termination cause of action. However, we find no error based on the other two contentions.

### A. Standard of Review

We review de novo the trial court's order granting a defendant's motion for summary adjudication. (*Guz v. Bechtel Nat., Inc.*, *supra*, 24 Cal.4th at p. 334; *Bradsbery v. Vicar Operating, Inc.* (2025) 110 Cal.App.5th 899, 907; see also *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851.)

### B. Summary Adjudication of the FEHA Discrimination Cause of Action Was Appropriate

SCPMG moved for summary judgment on the FEHA discrimination, failure to accommodate, and failure to engage in the interactive process causes of action in part on the ground the only disability alleged in the complaint—Thomas's ankle sprain— was not a cognizable disability under FEHA. Thomas sought to oppose by presenting evidence his causes of action were based in part upon vertigo. The trial court refused to consider Thomas's proffered evidence regarding vertigo because vertigo was not alleged as a disability in the SAC.

"[A] 'defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff

17

cannot bring up new, unpleaded issues in his or her opposing papers.' " (*Laabs*, *supra*, 163 Cal.App.4th at p. 1253.) Thus, Thomas could oppose summary judgment on his vertigo theory only if that issue was raised by his SAC. Thomas largely concedes the SAC did not mention vertigo, but he argues it was encompassed by the SAC's allegation he "suffered from, amongst other things, ankle sprain," and "suffered from a disability/medical condition, including ankle sprain." We disagree.

"[O]ne of the purposes of a complaint is to apprise the defendant of the basis on which the plaintiff seeks recovery," that is, " 'the factual basis for the claim.' " (*Prue v. Brady Co./San Diego, Inc.* (2015) 242 Cal.App.4th 1367, 1376; see also *Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exchange* (2005) 132 Cal.App.4th 1076, 1099.) The SAC plainly alleges Thomas's disability was a sprained ankle he suffered on December 9, 2016. The SAC neither mentions vertigo nor Thomas tripping because he was dizzy, let alone that he became dizzy because of vertigo. Its vague implication Thomas might have suffered from other unspecified disabilities does not fairly encompass vertigo, particularly when Thomas confirmed in January 2019 the alleged disability was his sprained ankle. (See *Lackner v. North* (2006) 135 Cal.App.4th 1188, 1201–1202, fn. 5 [general allegations of a failure "to take other precautions" did not encompass the plaintiff's new theory of failure to post signs].)

Thomas argues his "ankle injury and vertigo are logically related" and his vertigo caused him to become dizzy, trip, and thus sprain his ankle. But none of that was alleged in the SAC. Rather, the new factual issue of vertigo "rest[s] on a fundamentally different factual basis" than the allegations of

18

Thomas's SAC. (*Laabs, supra,* 163 Cal.App.4th at p. 1257.) A review of Thomas's proposed third amended complaint submitted in connection with his motion for leave to amend confirms the extensive differences in the factual basis of the vertigo theory, none of which had been fairly raised in the SAC. For example, the proposed third amended complaint contained new factual allegations dating back to 2014 regarding Thomas's vertigo diagnosis, accommodations he sought from SCPMG employees for that condition in 2014 and 2015 (employees who had not been mentioned in the SAC), and a 2016 knee injury. That is, the third amended complaint "attempts to predicate liability on a totally different condition"—vertigo—occurring over the course of a different time period, none of which was alleged in the SAC. (*Id.* at p. 1258.)

Our conclusion the trial court did not err in summarily adjudicating the FEHA disability discrimination cause of action is fatal to Thomas's challenges to the trial court's grant of SCPMG's Motion in Limine A and to the court's refusal to instruct the jury about perceived disability. Thomas concedes as much.

## C. The Trial Court Erred in Summarily Adjudicating the Section 6310 Cause of Action, and the Error Prejudicially Affected Aspects of Trial

Section 6310, subdivision (a) prohibits employees being discharged or discriminated against because they have "[m]ade any oral or written complaint to . . . their employer." (See *id.,* subd. (a)(1).) The type of complaint covered is "a bona fide oral or written complaint to . . . their employer . . . of unsafe working conditions . . . in their employment or place of employment." (*Id.*, subd. (b).) By its terms, the statute expressly applies to safety complaints made by an employee to his employer. (See *Touchstone Television Productions v. Superior Court* (2012) 208 Cal.App.4th 676, 679, 682 (*Touchstone*); see also *Ferrick v. Santa Clara University* (2014) 231 Cal.App.4th 1337, 1350–1351 (*Ferrick*).) Thomas's section 6310 cause of action alleged SCPMG "discriminated and retaliated against [him]" because he complained to Dainty the staircase was unsafe without nonskid pads.

The trial court erred in granting summary adjudication in favor of SCPMG on the ground section 6310, subdivision (a) did not apply to " 'informal complaints directly to the employer.' " For that proposition, the court relied upon *Division of Labor Law Enforcement v. Sampson* (1976) 64 Cal.App.3d 893, 896–897 (*Sampson*). But *Sampson* was interpreting the language of section 6310, former subdivision (a), which prohibited discrimination against an employee "because such employee has filed any complaint," without specifying to whom the complaint was made. (Stats. 1974, ch. 1284, § 9, p. 2782; see also *Sampson*, at pp. 896–898.) At the time, former subdivision (b) of section

20

6310 provided the safety complaint had to be made "to the division"; it did not mention complaints made to an employer. (Stats. 1974, ch. 1284, § 9, p. 2782; see also *Sampson*, at p. 898.) In 1977, the Legislature amended section 6310, former subdivisions (a) and (b) to include complaints made by an employee "to . . . his employer." (Stats. 1977, ch. 460, § 1, p. 1515.) As we have already explained, the current version of section 6310 expressly includes complaints made by an employee to his employer.

SCPMG does not meaningfully defend the trial court's reasoning. We need not opine on the continued vitality of *Sampson*'s reasoning because it is beside the point: it interpreted statutory language that changed long ago. (See *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1337 ["the meaning of 'net monetary recovery' (§ 1032(a)(4)) is not controlled by . . . cases construing the prior version of section 1032"]; *Becerra v. Superior Court* (2017) 19 Cal.App.5th 967, 976 ["[Real party in interest's] reliance on cases construing a former version of the law are inapposite on this point."].) Indeed, it would be "nonsensical" to hold "case law interpreting a former version of the statute . . . control[s] over the language of the current version." (*Grossmont Hosp. v. W.C.A.B.* (1997) 59 Cal.App.4th 1348, 1360.)

Rather than defend the trial court's rationale, SCPMG urges us to affirm on two alternative grounds: (1) Thomas merely "made a suggestion," not a "complaint"; and (2) Thomas failed to come forward with sufficient evidence SCPMG's proffered reason for terminating him was pretextual. We do not agree.

1. **There Was a Triable Issue of Material Fact Thomas Made a "Complaint" Within the Meaning of Section 6310**

We refuse to affirm on the alternative ground Thomas merely made a suggestion regarding the staircase. First, SCPMG's briefing on summary judgment characterized Thomas's comment to Dainty as an "[i]nformal [v]erbal [c]omplaint" to which section 6310 did not apply because it was not made to a government agency. The trial court expressly found "[i]t is undisputed [Thomas] made an informal oral complaint . . . to [SCPMG]." (Italics omitted.) It is too late for SCPMG to dispute that factual issue for the first time on appeal. (See *Nicoletti*, *supra*, 97 Cal.App.5th at p. 144; see also *Venice Suites*, *supra*, 71 Cal.App.5th at p. 724.)

Second, we view the record in the light most favorable to Thomas. (*Nicoletti*, *supra*, 97 Cal.App.5th at p. 144.) Thomas told Dainty the absence of nonskid pads made the stairs potentially hazardous to employees and patients. Dainty testified that in response to Thomas's complaint, Joanna Robinson had asked SCPMG's support services whether nonskid pads could be installed on the stairs. On this record, a reasonable jury could find Thomas made a complaint about a workplace safety hazard within the meaning of section 6310. (See *Ferrick*, *supra*, 231 Cal.App.4th at pp. 1350–1351.)

2. **There Was a Triable Issue of Material Fact Regarding Pretext**

SCPMG next argues we can affirm the summary adjudication on the ground Thomas failed to establish a genuine issue of material fact that SCPMG's proffered reason for his termination (timecard fraud) was pretextual. (See *Yanowitz v.*

22

*L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1062 (*Yanowitz*); see *id.* at p. 1042; see also *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 804–805.[7]) In order to do so, Thomas could "not 'simply show the employer's decision was wrong, mistaken, or unwise. Rather, [he] " '[had to] demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," [citation], and hence infer "that the employer did not act for the [ . . . asserted] non-discriminatory reasons." ' " ' " (*Morgan v. Regents of University of Cal.* (2000) 88 Cal.App.4th 52, 75.) In denying SCPMG's motion for summary adjudication on Thomas's retaliation causes of action premised on FEHA and sections 98.6 and 1102.5, the trial court concluded Thomas had come forward with sufficient evidence of pretext. We agree with the court's analysis, and its reasoning equally applies the section 6310 cause of action.

SCPMG's brief actually highlights the evidence undermining the plausibility of its proffered reason for Thomas's termination. First, there was evidence that terminating Thomas for five instances of failing to clock out was unduly harsh and not in conformance with SCPMG's policies. (See *Yanowitz, supra,* 36 Cal.4th at p. 1062 ["triable issues of fact as to whether [employer's] heightened response . . . was retaliation"]; see also *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 172 ["Showing disparate treatment or policy enforcement is a permissible means to establish pretext."].)

---

[7] Both parties assume the *McDonnell Douglas* burden shifting test for FEHA retaliation also applies to section 6310 retaliation. For purposes of this appeal, so do we.

We reject SCPMG's argument that such evidence cannot establish a basis for pretext as a matter of law. The portion of the case it cites for that proposition was discussing the employer's burden to proffer a nondiscriminatory reason for the termination; it was not addressing the employee's burden to show pretext. (See *McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1524.)

Second, SCPMG mischaracterizes the inconsistencies between Garcia's and Dainty's testimony as immaterial. Garcia's denial she complained to Dainty about any employee, let alone Thomas, is evidence creating a triable issue of material fact as to why or when Dainty actually began to investigate Thomas, because she claimed she did so as a result of Garcia's complaint.

Moreover, the trial court did not rely upon that inconsistency alone, but referred to "the inconsistent and conflicting deposition testimony between [SCPMG's] employees, including Dainty and Garcia," which "could be evidence of a 'cover-up' or pretext." That inference is further supported by inconsistencies between Rankin's and Dainty's testimony regarding: (1) if and when Dainty asked Rankin to make notes about Thomas; (2) who created the notes memorializing the investigation; and (3) when or if the noted incidents occurred. We also note Dainty asked Thomas about his timekeeping practices only after he had complained to her about the stairs. (Cf. *Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 353 [temporal proximity of discharge does not show pretext "where the employer raised questions about the employee's performance *before* he disclosed his symptoms"].)

24

On this record, a reasonable jury could believe the investigation itself was some evidence of pretext.[8] (See *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 277–283 [shortcomings in investigation of complaint about the plaintiff were evidence of pretext]; see also *Wilkin v. Community Hospital of Monterey Peninsula* (2021) 71 Cal.App.5th 806, 824–825 ["intentional fabrication" may support pretext].) Thus, we decline to affirm the summary adjudication on that alternative ground.

### 3. Thomas Was Prejudiced as to His Section 6310 and Wrongful Termination Causes of Action

SCPMG argues even if there was an error in granting summary adjudication on the section 6310 cause of action, reversal is unwarranted because Thomas cannot show prejudice. Specifically, SCPMG argues the jury's rejection of Thomas's FEHA retaliation claim (and the jury's finding "Thomas' stairwell injury was not a substantial motivating factor of his termination") precludes Thomas from establishing that "same element" of his section 6310 claim. (See *Wentworth v. Regents of University of California* (2024) 105 Cal.App.5th 580, 599–600.) We disagree.

The jury's conclusion regarding Thomas's ankle injury is not dispositive of his section 6310 cause of action. For FEHA retaliation, the issue presented to this jury was whether Thomas's "reporting a rolled/sprained ankle" was "a substantial

---

[8]     At oral argument, SCPMG pointed to trial evidence supposedly showing a lack of pretext. However, in reviewing summary judgment, we " ' "examine only papers before the trial court when it considered the motion." ' " (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1474.)

motivating reason for [SCPMG's] decision to discharge [him]."
(See *Nejadian v. County of Los Angeles* (2019) 40 Cal.App.5th
703, 722 (*Nejadian*); see also *id.* at p. 723.) But that was not an
element of his section 6310 cause of action. Rather, he had to
show he was " 'discharge[d] . . . or discriminated against by
[SCPMG] because of [his] complaints about unsafe work
conditions.' " (*Touchstone*, *supra*, 208 Cal.App.4th at p. 681.) The
jury's conclusion Thomas's report of a sprained ankle was not a
substantial reason for his termination does not bear upon
whether he was fired for complaining the staircase was unsafe.
Thus, Thomas was prejudiced by the erroneous summary
adjudication of his section 6310 cause of action, and we reverse
that portion of the judgment.

The erroneous summary adjudication also affected the trial
of Thomas's wrongful termination cause of action. That tort can
be predicated upon a violation of section 6310. (See *Boston v.
Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 942, 947.)
But in light of the summary adjudication, the trial court refused
to allow Thomas to offer evidence or argument at trial regarding
the alleged section 6310 violation, and it refused to allow the jury
to consider section 6310 as a potential premise for wrongful
termination. We therefore also reverse the judgment on the
wrongful termination tort. (See *McDaniel v. Gile* (1991)
230 Cal.App.3d 363, 376.) Because we reverse on that ground, we
do not consider whether the trial court also erred in responding to
a jury question about that cause of action during deliberations.

### 4. No Prejudice Affected the Section 1102.5 Cause of Action

However, the summary adjudication error did not prejudice
the adjudication of Thomas's section 1102.5 cause of action.

26

Thomas asserts he was prejudiced because he "could not mention section 6310 at trial even though his [section] 1102.5 [cause of action] [was] predicated on it," and he was likewise prejudiced when the court refused to allow the jury to see a copy of section 6310 in response to their question on the section 1102.5 cause of action.

Section 1102.5 provides "[a]n employer . . . shall not retaliate against an employee for disclosing information . . . if the employee has reasonable cause to believe that the information discloses a violation of state . . . statute, or a violation of or noncompliance with a . . . state . . . rule or regulation." (*Id.*, subd. (b).) That statute " 'encourag[es] workplace whistle-blowers to report unlawful acts without fearing retaliation.' " (*People ex rel. Garcia-Brower v. Kolla's, Inc.* (2023) 14 Cal.5th 719, 723.) As Thomas's counsel acknowledged at trial, "[t]here has to be a statutory basis for the [section] 1102.5" cause of action.

Thomas does not argue his telling Dainty on December 9, 2016, the stairs were unsafe *itself* disclosed a violation of section 6310, let alone that he had reasonable cause to believe it did. Indeed, section 6310 does not require safe staircases or working conditions per se; rather, it prohibits discrimination and retaliation by an employer when an employee complains of unsafe working conditions. (*Id.,* subd. (b); see also *Cabesuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101, 109 [§ 6310 does not necessarily require " 'an OSHA standard or order [be] violated' "].) In this case, Thomas alleged Dainty and SCPMG retaliated against him *after* his December 9, 2016, complaint about the staircase. But for purposes of his section 1102.5 cause of action, Thomas has not identified any statute he had reasonable cause to believe was

27

violated by the condition of the stairs on December 9, let alone that he sought to refer to those statutes at trial and was prevented from doing so. (See *Ross v. County of Riverside* (2019) 36 Cal.App.5th 580, 592 [" 'the employee must be able to point to . . . some statute, rule or regulation which may have been violated by the conduct he disclosed' "].) Thus, Thomas was not prejudiced by the trial court's refusal to allow him to refer to section 6310 as a premise for his section 1102.5 cause of action.

We therefore affirm the judgment on Thomas's section 1102.5 cause of action.

### D. The Trial Court Properly Granted Summary Adjudication of the Punitive Damages Claim

Thomas argues if we reverse the summary adjudication of the section 6310 cause of action, we should also reinstate his punitive damages claim because there was sufficient evidence to raise a triable issue of material fact that: (1) SCPMG acted with " 'malice' or 'oppression' "; and (2) Dainty was SCPMG's managing agent. The trial court held there was no evidence SCPMG's conduct rose to the level required for punitive damages, and it did not reach the managing agent issue. We affirm on the ground Thomas failed to show a triable issue of material fact that Dainty was SCPMG's managing agent.

"[T]he term 'managing agent' . . . include[s] only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy." (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 566–567 (*White*), quoting Civ. Code., § 3294, subd. (b).) That is, "a managing agent [is] more than a mere supervisory employee." (*White*, at p. 573.) "In order to demonstrate that an employee is a true managing agent

28

. . . , a plaintiff seeking punitive damages would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business." (*Id.* at p. 577.)

In *White*, the supervisor was a managing agent because she supervised "eight retail stores and sixty-five employees" for the employer, which "is a significant aspect of [the employer's] business." (*White, supra,* 21 Cal.4th at p. 577.) The supervisor "exercised substantial discretionary authority over vital aspects of [the employer's] business," including "managing numerous stores on a daily basis and making significant decisions affecting both store and company policy." (*Ibid.*)

Thomas offered no similar evidence here to contradict the evidence presented by SCPMG that Dainty was not a managing agent. Dainty administered one department within one of SCPMG's medical centers. Her role was simply to "supervis[e] the day to day operations in [her] department," but she "[did] not create SCPMG corporate policies," and instead "help[ed] to enforce policies created by others." Thomas has failed to identify any evidence suggesting Dainty managed a significant part of SCPMG's business or had discretion to make, interpret, or apply SCPMG's corporate policies "on a corporationwide basis." (*Davis v. Kiewit Pacific Co.* (2013) 220 Cal.App.4th 358, 373; cf. *id.* at p. 370.) Summary adjudication was therefore appropriate on Thomas's claim for punitive damages.

## DISPOSITION

The judgment is reversed as to Thomas's section 6310 and wrongful termination causes of action. It is otherwise affirmed. The parties shall bear their own costs. (See Cal. Rules of Court, rule 8.278(a)(3).)

                                   RICHARDSON, J.

WE CONCUR:

LUI, P. J.

SIGGINS, J.*

---

\*      Retired Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.